UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                                      )
                                            )  Case No. 09-10571 (BLS)
WL Homes, LLC, et. al.,[1]                  )
                                            )  Chapter 11
Debtor.                                     )
                                            )  **Hearing Date: May 19, 2009 @ 10:00 a.m.**
                                            )  **Objection Deadline: May 12, 2009 @ 4:00 p.m.**


## MOTION FOR RELIEF FROM AUTOMATIC STAY

COMES NOW Thomas A. and Mary E. Billmaier Revocable Trust, Gerry and Pierrette Guidry, Steven and Kerri Schommer, and Hollis Toomey ("Movants"), by and through their undersigned counsel Kutner Miller Brinen, P.C., and as their Motion for Relief from Stay state as follows:

1.      On February 19, 2009, WL Homes, LLC ("WLH" or "Debtor") filed its voluntary Chapter 11 petition for relief.

2.      The Court has jurisdiction to hear the Motion pursuant to 28 U.S.C. § 1334. This Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A),(B),(G) and (O).

3.      Prior to its case filing, the Debtor was engaged in the business of new home construction in Colorado.

4.      One construction project in which the Debtor participated was a neighborhood development described as the Vista Ridge Filing No. 1B-a, located in Erie, Colorado, where Movants reside ("Development").

5.      On or about January 5, 2009 and as a result of construction defects and deficiencies which have allegedly caused damage to the Movants, as well as the failure to appropriately repair damage to the Movants' homes, Movants commenced Suit against WLH and others.

6.      Prior to the Debtor's Case filing, Debtor was a defendant in a lawsuit filed by Movants and pending in the Weld County District Court, Colorado, styled:

---

[1] The Debtors in these cases, along with the last four digits of each of the Debtor's federal tax ID number, are: WL Homes, LLC (6595); JLII Realty & Construction, Inc. (1899); JLH Arizona Construction, LLC (2154); WL Texas, LP (0079); Laing Texas, LLC (0052). The current mailing address for each of the Debtors is 19520 Jamboree Road, Suite 500, Irvine, CA 92612.

*Thomas A. and Mary E. Billmaier Revocable Trust, Gerry Guidry and Pierrette Guidry, Steven Schommer and Kerri Schommer, and Hollis Toomey,*

      *Plaintiffs,*

*V.*

*WL HOMES LLC, a Delaware Limited Liability Company d/b/a JOHN LAING HOMES; RICHARD LARSON, individually; AMERICAN ZURICH INSURANCE COMPANY, an Illinois Insurance Company; ZURICH AMERICAN INSURANCE COMPANY, a New York Corporation; ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS, an Illinois Insurance Company; ZURICH SPECIALITIES LONDON LIMITED, a New York Insurance Company; and John Does 1 through 50, consisting of currently unknown "NAMES" of ZURICH or related insurance companies, a class of similarly situated Defendants*

      *Defendants.*

Case No. 09-CV-74, and relating generally to claims for property damage and loss of use resulting from defects in the construction and repair of Movants' residences, and alleging various causes of action related thereto (hereafter, the "Colorado State Court Action"). A copy of Movants' Amended Complaint filed in the Colorado State Court Action is attached as Exhibit A and incorporated fully herein by this reference.

      7.     Movants have determined that, during the relevant time, Debtor likely had in place an insurance policy (or policies) covering some or all of Debtor's liability to Movants that may exist.

      8.     The Colorado State Court Action is presently stayed by virtue of the automatic stay imposed by 11 U.S.C. § 362(a)(3).

      9.     Movants desire to proceed with the Colorado State Court Action so as to establish their claims against Debtor and the other Defendants, and to recover upon any favorable judgment rendered against any applicable insurance policies which exist and that may allow recovery for the damages alleged in the Colorado State Court Action.

      10.     Movants intend to preserve their claims against the Debtor's estate for any alleged damages in the event they prevail at trial by filing a proof of claim in the Debtor's case. However, Movants agree such claim would be reduced from the insurance proceeds that may be collected in the event they prevail in the Colorado State Court Action.

      11.     Movants submit that, under the circumstances and relevant case law, they should be entitled to relief from stay so as to pursue the Colorado State Court Action. *In re Sfuzzi,* 199 B.R. 664, 668 (Bankr. N.D. Tex. 1996). The Debtor will not be substantially impaired if such relief is

granted, as it possessed insurance to protect itself in the event any claims such as have been asserted by Movants were made. The rights to payment under the policy do not inure to the benefit of the Debtor, but rather to third-party beneficiaries such as the Movants.

12. The Third Circuit has expressly concluded that an insurance policy is property of the estate within the meaning of Section 541, even though the policy has not matured, has no cash value, or is otherwise contingent. *Estate of Lellock v. Prudential Ins. Co. of Am.*, 811 F.2d 186, 189 (3d Cir. 1987).

13. However, proceeds from an insurance policy should be evaluated separately from the debtor's interest in the policy itself. *First Fidelity Bank v. McAteer*, 985 F.2d 114, 117 (3d Cir. 1993); *In re Allied Digital Prod. Corp.*, 306 B.R. 505, 512 (Bankr. D. Del. 2004); *In re 15375 Memorial Corp.*, 382 B.R. 652, 687 (Bankr. D. Del. 2008) (rev'd on other grounds by *In re 15375 Memorial Corp.*, 2009 WL 187570 (D. Del. 2009). As has been determined, "[b]ecause a debtor would have no right to the proceeds of liability insurance, such proceeds are not considered property of the bankruptcy estate and stay relief to allow a personal injury clamant to pursue an action against the debtor as a nominal defendant for the purpose of recovering under an insurance policy is appropriate." *In re SunCruz Casinos, LLC*, 377 B.R. 741, 749 (Bankr. S.D. Fla. 2007), *citing In re Scott Wetzel Services, Inc.*, 243 B.R. 802, 805 (Bankr. M.D. Fla. 2000). If Movants are able to realize upon a favorable judgment from possible insurance policies, it would not adversely affect assets that constitute general property of the estate under 11 U.S.C. § 541. Insurance proceeds are not ordinarily available for general unsecured creditor repayment but rather inure to the benefit of aggrieved parties (like Movants) for whom such policies are earmarked. Id. *See also*, 11 U.S.C. § 541. *In re Edgeworth*, 993 F.2d 51, 55-56 (5th Cir. 1993). Thus, the potential proceeds available from the insurance policies are not needed in order for the Debtor to successfully reorganize.

14. In addition, in the event Movants are not granted the requested relief, the relative hardship they will suffer will substantially outweigh that which the Debtor might suffer as a result of the Colorado State Court Action proceeding to conclusion. *In re Peterson*, 116 B.R. 247 (D. Colo. 1990); *In re American Classic Voyages, Inc.*, 298 B.R. 222, 225 (D. Del. 2003). Movants are homeowners who purchased their residences from the Debtor and incorporated Debtors' business products in their residences, and have allegedly been damaged by Debtor's business activities and defective construction. If Movants are denied the opportunity to pursue the Colorado State Court Action, they will be deprived of the opportunity to be made at least partially whole from the collection of insurance proceeds that may exist to satisfy their claims.

15.     Proceeding with the Colorado State Court Action and the possible collection of insurance proceeds by Movants in that action will serve to enhance a primary goal of the bankruptcy process by serving as a potential basis for the repayment of creditors and by fixing and reducing claims against the estate, thereby conserving the Court's judicial resources. Upon information and belief, the presence of significant insurance coverage exists here which, if paid to Movants upon success in the Colorado State Court Action, will reduce the dollar value of claims which exist against the general estate assets.

16.     There is also no reason to believe that the issues of the Colorado State Court Action could be resolved any more swiftly in this Court than in the Colorado State Court Action, where it has been pending, and where that court regularly deals with the Colorado tort, statutory contact and insurance issues as are raised by the Colorado State Court Action, and which Court is located close to the Movants and their homes.

17.     The Debtor's cost of litigating the Colorado State Court Action will be shouldered by its insurance carriers in accordance with their duties to defend under their contracts of insurance. Case law is clear that "the cost of defense is, standing alone, ordinarily considered an insufficient basis for denying relief from stay." *Smith v. Tricare Rehabilitation Sys., Inc.*, 181 B.R. 569, 575 (Bankr. N.D. Ala. 1994). However, even if in the unlikely event and for some reason that cannot be presently foreseen those defense costs are not paid by Debtor's insurance carriers, or if relief from stay is denied, the claims asserted in the Colorado State Court Action will proceed in whatever forum is appropriate. Therefore, denying relief from stay will not serve to lessen the impact of the expenses or fees that will be incurred in defending Movants' claims.

18.     As previously stated, the Estate will not be prejudiced by Movants' pursuit of the Colorado State Court Action because Movants seek to liquidate their claims and recover from assets that are not property of the Estate (i.e., potential insurance proceeds).  To the extent Movants opt to file a proof of claim and share in any distribution that may be forthcoming from property that is part of the Estate in the event the insurance proceeds are insufficient to satisfy their claims, Movants simply will be exercising those rights afforded them by the bankruptcy process.

19.     Consequently, cause exists under 11 U.S.C. § 362(d)(1) and 11 U.S.C. § 362(d)(2)(B) to lift the automatic stay to allow the Colorado State Court Action to proceed.

WHEREFORE, Movants respectfully request that the Court enter an Order granting them relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and 11 U.S.C. § 362(d)(2)(B) so as to allow them to proceed with their claims against the Debtor in the Colorado State Court Action, to

liquidate their claims against the Debtor, to collect from any available insurance proceeds in the event they prevail in that litigation and for any such other relief as this Court deems just and proper.

Dated: April 22, 2009.

Respectfully submitted,

By: _____

David M. Miller (Colorado #17915)
Aaron A. Garber (De No. 3837)

KUTNER MILLER BRINEN, P.C.
303 E. 17th Avenue, Suite 500
Denver, CO 80203
Telephone: (303) 832-2400
Facsimile: (303) 832-1510
Email: dmm@kutnerlaw.com

_John Laing_

*John Laing* (handwritten)

| | | |
|---|---|---|
| **DISTRICT COURT, WELD COUNTY, COLORADO**<br>P.O. Box 2038<br>Greeley, Colorado 80632 | | **FILED**<br>01 2009 |
| **Plaintiffs:**    **THOMAS A. and MARY E. BILLMAIER REVOCABLE TRUST, GERRY GUIDRY and PIERRETTE GUIDRY, STEVEN SCHOMMER and KERRI SCHOMMER, and HOLLIS TOOMEY** | | ▲ **COURT USE ONLY** ▲ |
| v. | | |
| **Defendants:**    **WL HOMES LLC, a Delaware Limited Liability Company d/b/a JOHN LAING HOMES, and RICHARD LARSON, individually** | | Case Number: 09CV74<br>Div.: 1 |
| **Attorney:**<br>Scott F. Sullan, No. 9985<br>Joseph F. Smith, No. 30960<br>SULLAN², SANDGRUND, SMITH & PERCZAK, P.C.<br>1875 Lawrence Street, Suite 850<br>Denver, CO 80202<br>Telephone:    303-779-0077<br>Fax No:    303-779-4924<br>Email:    jsmith@vsss.com | | |
| | **COMPLAINT AND JURY DEMAND** | |

Plaintiffs, the Thomas A. and Mary E. Billmaier Revocable Trust, Gerry Guidry and Pierrette Guidry, Steven Schommer and Kerri Schommer, and Hollis Toomey, through their attorneys, Sullan², Sandgrund, Smith & Perczak, P.C., submit the following *Complaint and Jury Demand* against the above named Defendants:

## GENERAL ALLEGATIONS

1.     The Thomas A. and Mary E. Billmaier Revocable Trust is the owner of a single family residence located at 2775 Ironwood Circle, Erie, Weld County, Colorado (hereinafter the "Billmaier Home"). Thomas A. and Mary E. Billmaier, trustees of the Thomas A. and Mary E. Billmaier Revocable Trust, reside at the Home.

2.     Gerry and Pierrette Guidry are the owners of and reside at a single family residence located at 2781 Ironwood Circle, Erie, Weld County, Colorado (hereinafter the "Guidry Home").

Exhibit A

3. Steven and Kerri Schommer are the owners of and reside at a single family residence located at 2759 Ironwood Circle, Erie, Weld County, Colorado (hereinafter the "Schommer Home").

4. Hollis Toomey is the owner of and resides at a single family residence located at 2784 Ironwood Circle, Erie, Weld County, Colorado (hereinafter the "Toomey Home").

5. Throughout this *Complaint* the Billmaiers, Guidrys, Schommers and Mrs. Toomey may be referred to collectively as the "Homeowners" and their homes may be referred to collectively as the "Homes."

6. WL Homes LLC, a Delaware limited liability company d/b/a John Laing Homes ("Laing") was the owner, developer, general contractor and builder-vendor of the Homes and sold the Homes to the Homeowners.

7. At all times material to this *Complaint*, Defendant Richard Larson ("Larson") was a principal, officer, director, manager, employee and/or agent of Defendant Laing who actively participated in, cooperated with, directed, sanctioned, and otherwise implemented the negligent and otherwise wrongful conduct of Laing described in this *Complaint*. At all times material to this *Complaint*, the acts and omissions of Larson were the acts and omissions of Laing.

8. As the developer, general contractor and builder-vendor, Laing had a nondelegable duty to exercise reasonable control and supervision over all construction activities relating to the Homes and to act reasonably in quality checking and approving such work (upon information and belief some of which was performed by subcontractors) and also had a nondelegable duty to ensure such work was done in a good and workmanlike manner and in accordance with all applicable plans, specifications, recommendations and building codes.

9. At the time Defendants developed, designed, constructed and sold the Homes, they knew or should have known that the area where the Homes are located contains soils presenting special or peculiar dangers in the construction of such Homes and inherent in the nature of the construction of such Homes, different in kind from the ordinary risks that commonly confront persons constructing such homes in Colorado. Each of the Defendants knew or should have known of these inherent risks, including the risk that the intrusion of water into such soils and/or other improper construction techniques could result in significantly increased pore water pressures within such soils that might imperil the structural integrity of the Homes; and each knew or should have known that if any home is to be constructed on such soils, such home should be designed and constructed in such a manner as to be able to withstand the consolidation of such soils and the risks inherent in such a site. Further, the Defendants knew or should have known that construction of the Homes above shallow subsurface groundwater conditions would result in unacceptable differential foundation movement. Despite these facts, certain portions of the structural elements of the Homes were not adequately constructed and/or designed to withstand foreseeable, significantly increased pore water pressure and differential movement resulting from the construction and/or design of the Homes.

10.     At the time Defendants developed, designed, constructed and sold the Homes, the Defendants knew or should have known that construction of homes on the type of soils and groundwater conditions present on the lots on which the Homes were built constituted an inherently dangerous activity, but failed to disclose the same to the Homeowners. This home construction activity qualifies as "inherently dangerous" because (1) it presents a special or peculiar danger to others that is inherent in the nature of the activity or the particular circumstances under which the activity is to be performed, (2) it is different in kind from the ordinary risks that commonly confront persons in the community, and (3) the person or persons responsible for the activity know or should know it is inherent in the nature of the activity or in the particular circumstances under which the activity is to be performed.

11.     Additionally, upon information and belief, at the time the Defendants sold the Guidry Home, the Defendants had implemented repairs to damage resulting from significantly increased pore water pressure and differential movement, but failed to disclose this adverse material information to the Guidrys. Further, upon information and belief, Defendants knew or should have known that such repairs would not properly and permanently resolve the problems with the Guidry Home and failed to disclose this adverse material information to the Guidrys.

12.     In or about early 2007, Defendants began to implement foundation-related repairs to the Guidry Home. Those repairs were never completed, and the Guidrys have discovered that such repairs would not properly and permanently resolve the problems with the Guidry Home. Additionally, during the course of those improper repairs, Laing's repair subcontractor substantially damaged the interior foundation drain system originally installed at the Guidry Home, causing water that infiltrated the foundation subsoils to pond in areas of the Guidrys' basement crawl space, saturating those subsoils and causing noxious odors within the Guidry Home.

13.     Defendants knew or should have known that the introduction of water into the foundation subsoils would exacerbate the shallow subsurface groundwater conditions and greatly increase the risk of unacceptable foundation movement. Despite these facts, the Defendants failed to design and construct the foundations, foundation drainage systems and subsurface groundwater remediation systems for the Homes in a manner which prevented water from infiltrating the subsoils.

14.     The Homeowners have discovered deficiencies in, actual property damage to, and/or the loss of use of, some or all of the Homes, including movement of the basement floor systems, damage to and movement of the foundations, damage to the upper level living areas, and damage to porches, patios, garages, and driveways. These deficiencies have caused progressive, continuing and worsening damage to the Homes. Such damage has caused, and continues to cause, actual property damage continuing through the present, even though said damage may not have been obvious upon inspection.

15.     At the time Defendants developed, designed, constructed and sold the Homes, the Defendants knew or should have known that if any residence is to be constructed with a building envelope of the type installed at the Homes, such residence should be designed and constructed

in such a manner as to be able to withstand the elements to which that building envelope will be exposed.

16.     The Homeowners have discovered deficiencies in, actual property damage to, and/or the loss of use of, some or all of the Homes, including improper installation of the building envelope system and related building envelope failures, as well as resulting and consequential property damage to other elements of the Homes' construction. These deficiencies have caused progressive, continuing and worsening damage to the Homes. Such damage has caused, and continues to cause, actual property damage continuing through the present, even though said damage may not have been obvious upon inspection.

17.     The Homeowners have been able to fully utilize and enjoy their Homes to their fullest extent and have lost the use and quiet enjoyment of their Homes and have suffered emotional distress, annoyance, discomfort, inconvenience and aggravation because of the damages caused by the defects in their Homes and because of Defendants' failure to effect permanent repairs of said damages in order to eliminate such defects. At all material times, Defendants made the decisions that caused such damages and injuries.

18.     When the Defendants' attention was initially called to the damages and injuries caused by the defects, the Defendants assured the Homeowners that the damages and injuries were not caused by any substantial defect or defects in the Homes, and that all such damages and defects had been or would be completely and permanently repaired by or at the direction of the Defendants.

19.     When it became clear that the damages and injuries at the Homes, as well as damages and injuries at some or all of the other forty-six homes constructed and sold by Defendants in the same neighborhood, were caused by substantial defects in the Homes, the Defendants assured the Homeowners, as well as some or all of the other forty-six homeowners in the neighborhood, that all homes would be properly and permanently repaired, and that such repairs would include neighborhood-wide subsurface groundwater remediation systems and neighborhood-wide surface grading and drainage repairs.

20.     In advertising, marketing and selling the Homes, the Defendants participated in and authorized advertising statements which represented and warranted, in substance, that the Homes were constructed in a good and workmanlike manner, complied with all applicable codes (and would continue to comply with such codes if reasonably maintained), were fit and sound for human habitation, and were suited for their reasonably anticipated uses.

21.     In advertising, marketing and selling the Homes, the Defendants participated in and authorized advertising statements which negligently misrepresented that the Homes were of a particular standard, grade or quality when these Defendants knew or should have known that they were not.

22.     Contrary to the representations authorized to be made by the Defendants, the Homes were not built in a good and workmanlike manner, were not suited for their reasonably anticipated uses, and/or were built in such a condition that they threaten to become uninhabitable

- 4 -

or in violation of applicable codes; and, the Homeowners have learned that their Homes were negligently constructed on soils and shallow subsurface groundwater conditions recognized by engineers as presenting special or peculiar dangers in the construction of the Homes or, in the alternative, containing the potential for differential movement.

23. The Homeowners reasonably relied upon the substance of the advertising representations and warranties made or authorized to be made by the Defendants in purchasing the Homes; or, alternatively, relied on the Defendants' failure to disclose adverse material facts relating to the Homes.

24. As a result of the Defendants' negligent actions or omissions, individually or by and through their employees, agents, subcontractors, and contractors, and the Defendants' general supervision thereof, the Homeowners have sustained and/or will sustain damages including, by way of illustration, property damage, diminished value of the Homes, costs of repairs, loss of improvements, loss of use of all or portions of the Homes, aggravation, inconvenience, annoyance, and discomfort and other consequential damages.

25. Upon information and belief, subcontractors, pursuant to express or implied agreement, were delegated a part of the construction of the Homes by the Defendants; the Defendants supervised and approved each of the subcontractors' work, which work was intended to be done pursuant to plans and specifications approved by, and the directions of, the Defendants, all such work subject to the inspection and approval of the Defendants. As such, the Defendants and each of their subcontractors consciously and deliberately pursued a concerted and common plan, design, and course of conduct and action, expressly or impliedly, the execution of which common plan or design was done tortiously or otherwise wrongfully, as described elsewhere in this *Complaint*, resulting in the damages alleged herein. The Defendants are jointly and severally liable with each of their subcontractors for each other's tortious or otherwise wrongful acts. The Defendants' and their subcontractors' tortious or otherwise wrongful conduct, described below, arises from circumstances of willful and wanton conduct, and was accompanied by a reckless disregard of the rights and feelings of persons like the Homeowners.

26. The Homeowners have complied with C.R.S. § 13-20-801, *et seq.*, by engaging in an extended "Notice of Claim" process, and this process is complete. By doing so, The Homeowners do not intend to waive objections to the applicability of this statute, which the Homeowners believe does not apply to their claims, nor the constitutionality of such statute, which the Homeowners believe is unconstitutional.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment – CDARA Constitutionality)
### (All Defendants)

27. The Homeowners incorporate all the allegations set forth above.

28. Pursuant to C.R.S. § 13-51-102, Colorado's *Declaratory Judgment Relief Act*, and C.R.C.P. 57, "Any person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute,

municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder."

29.     By its terms, Colorado's *Declaratory Judgment Relief Act* is intended to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered, and this Court has the power and obligation to declare rights, status, and other legal relations of the parties whether or not further relief is or could be claimed, and even in advance of time when litigation might possibly arise or before repudiation of obligation, invasion of rights, or commission of wrongs has occurred.

30.     H.B. 03-1161, codified at C.R.S. §§ 13-20-802, -802.5, -803, -803.5, -804, -805, -806 and -807, Colorado's Construction Defect Action Reform Act ("CDARA"), provides the following, in pertinent part:

a.     C.R.S. §13-20-802.5(2) provides:

(2) "Actual damages" means the fair market value of the real property without the alleged construction defect, the replacement cost of the real property, or the reasonable cost to repair the alleged construction defect, whichever is less, together with relocation costs, and, with respect to residential property, other direct economic costs related to loss of use, if any, interest as provided by law, and such costs of suit and reasonable attorney fees as may be awardable pursuant to contract or applicable law. "Actual damages" as to personal injury means those damages recoverable by law, except as limited by the provisions of section 13-20-806(4).

b.     C.R.S. §13-20-802.5(3) provides:

(3) "Claimant" means a person other than the attorney general or the district attorneys of the several judicial districts of the state who asserts a claim against a construction professional that alleges a defect in the construction of an improvement to real property.

c.     C.R.S. §13-20-802.5(4) provides:

(4) "Construction professional" means an architect, contractor, subcontractor, developer, builder, builder vendor, engineer, or inspector performing or furnishing the design, supervision, inspection, construction, or observation of the construction of any improvement to real property. If the improvement to real property is to a commercial property, the term "construction professional" shall also include any prior owner of the commercial property, other than the claimant, at the time the work was performed. As used in this subsection (4), "commercial property" means property that is zoned to permit commercial, industrial, or office types of use.

d.     C.R.S. §13-20-804 provides:

(1) No negligence claim seeking damages for a construction defect may be asserted in an action if such claim arises from the failure to construct an improvement to real property

- 6 -

in substantial compliance with an applicable building code or industry standard; except that such claim may be asserted if such failure results in one or more of the following:

    (a) Actual damage to real or personal property;

    (b) Actual loss of the use of real or personal property;

    (c) Bodily injury or wrongful death; or

    (d) A risk of bodily injury or death to, or a threat to the life, health, or safety of, the occupants of the residential real property.

(2) Nothing in this section shall be construed to prohibit, limit, or impair the following:

    (a) The assertion of tort claims other than claims for negligence;

    (b) The assertion of contract or warranty claims; or

    (c) The assertion of claims that arise from the violation of any statute or ordinance other than claims for violation of a building code.

e.    C.R.S. §13-20-806 provides:

(1) A construction professional otherwise liable shall not be liable for more than actual damages, unless and only if the claimant otherwise prevails on the claim that a violation of the "Colorado Consumer Protection Act", article 1 of title 6, C.R.S., has occurred; and if:

    (a) The construction professional's monetary offer, made pursuant to section 130-20-803.5(3), to settle for a sum certain a construction defect claim described in a notice of claim is less than eighty-five percent of the amount awarded to the claimant as actual damages sustained exclusive of costs, interest, and attorney fees; or

    (b) The reasonable cost, as determined by the trier of fact, to complete the construction professional's offer, made pursuant to section 13-20-803.5, to remedy the construction defect described in the notice of claim is less than eighty-five percent of the amount awarded to the claimant as actual damages sustained exclusive of costs, interest, and attorney fees.

(2) If a construction professional does not substantially comply with the terms of an accepted offer to remedy or an accepted offer to settle a claim for a construction defect made pursuant to section 13-20-803.5 or if a construction professional fails to respond to a notice of claim, the construction professional shall be subject to the treble damages provision of section 6-1-113(2)(a)(III), C.R.S.; except that a construction professional shall be subject to the treble damages provision only if the claimant otherwise prevails on the claim that a violation of the "Colorado Consumer Protection Act", article 1 of title 6, C.R.S., has occurred.

(3) Notwithstanding any other provision of law, the aggregate amount of treble damages awarded in an action under section 6-1-113(2)(a)(III), C.R.S., and attorney fees awarded to a claimant under section 6-1-113(2)(b), C.R.S., shall not exceed two hundred fifty thousand dollars in any action against a construction professional.

(4)    (a) In an action asserting personal injury or bodily injury as a result of a construction defect in which damages for noneconomic loss or injury or derivative noneconomic loss or injury may be awarded, such damages shall not exceed the sum of two hundred fifty thousand dollars. As used in this subsection (4), "noneconomic loss or injury" has the same meaning as set forth in section 13-21-102.5(2)(b), and "derivative noneconomic loss or injury" has the same meaning as set forth in section 13-21-102.5(2)(a).

(b) The limitations on noneconomic damages set forth in this subsection (4) shall be adjusted for inflation as of July 1, 2003, and as of July 1 of each year thereafter until and including July 1, 2008. The adjustment made pursuant to this paragraph (b) shall be rounded upward or downward to the nearest ten dollar increment.

(c) As used in paragraph (b) of this subsection (4), "inflation" means the annual percentage change in the United States department of labor, bureau of labor statistics, consumer price index for Denver-Boulder, all items, all urban consumers, or its successor index.

(d) The secretary of state shall certify the adjusted limitation on damages within fourteen days after the appropriate information is available, and such adjusted limitation on damages shall be the limitation applicable to all claims for relief that accrue on or after July 1, 2003.

(5) Claims for personal injury or bodily injury as a result of a construction defect shall not be subject to the treble damages provisions of the "Colorado Consumer Protection Act", article 1 of title 6, C.R.S.

(6) In any case in which the court determines that the issue of a violation of the "Colorado Consumer Protection Act", article 1 of title 6, C.R.S., will be submitted to a jury, the court shall not disclose nor allow disclosure to the jury of an offer of settlement or offer to remedy made under section 13-20-803.5 that was not accepted by the claimant.

31.    Parts of the above-referenced CDARA provisions are unconstitutional, illegal and unenforceable under the U.S. and Colorado Constitutions because they: (a) deny Equal Protection under the law to similarly situated persons, (b) deny Due Process of law, (c) are derived from legislation improperly comprised of more than one subject, and/or (d) constitute unlawful retrospective legislation with retroactive effect. Alternatively, the portions of CDARA should be construed in a fashion so as to render them Constitutional.

32.    Without limitation, and in the event the Court finds that CDARA applies to the Homeowners' claims, this Court should find and declare that:

a.    H.B. 03-1161, codified as CDARA, is comprised improperly of more than one subject in violation of law and, therefore, is ineffective and unenforceable.

b.    CDARA irrationally treats people who suffer damage to their property due to construction defects differently from people who suffer injury to their property damage due to other kinds of wrongful or otherwise tortious acts and omissions and, as such, the damages limitations provided for by C.R.S. §13-20-806 and embedded in C.R.S. §13-20-802.5(2) and C.R.S. §13-20-802.5(4) deny Equal Protection and are void and unenforceable.

c.    Application of CDARA's damages limitations provided for by C.R.S. §13-20-804, C.R.S. §13-20-806 and embedded in C.R.S. §13-20-802.5(2) and C.R.S. §13-20-802.5(4) to causes of action that accrue on claims for relief before CDARA's effective date is not provided for by CDARA; or, alternatively, that to the extent CDARA is interpreted to apply to causes of action that accrue on claims for relief before CDARA's effective date, that such retrospective, retroactive application renders these parts of CDARA void and ineffective to limit the damages available on such claims for relief.

d.    Application of CDARA's damages limitations provided for by C.R.S. §13-20-804, C.R.S. §13-20-806 and embedded in C.R.S. §13-20-802.5(2) and C.R.S. §13-20-802.5(4) to claims for annoyance, aggravation, discomfort and inconvenience constitute limitations to recoverable "personal injury" damages subject only to any Constitutionally valid limitations per Plaintiff as provided for by CDARA and/or C.R.S. §13-21-102.5.

e.    Application of CDARA's damages limitations provided for by C.R.S. §13-20-804, C.R.S. §13-20-806 and embedded in C.R.S. §13-20-802.5(2) and C.R.S. §13-20-802.5(4) so as to prohibit a punitive damage award against "construction professionals" irrationally treats "construction professionals" differently from other tortfeasors, and, as such, any prohibition against awarding punitive damages arguably arising from CDARA denies Equal Protection and is void and unenforceable.

f.    Application of CDARA's damages limitations provided for by C.R.S. §13-20-806(3) so as to limit treble damage and attorney fee awards against "construction professionals" under Colorado's Consumer Protection Act, C.R.S. §§ 6-1-101, *et seq.*, treats "construction professionals" differently from other persons who violate Colorado's Consumer Protection Act, and, as such, such limitation denies Equal Protection and is void and unenforceable.

g.    Exemption of personal injury and bodily injury claims resulting from construction defects from the treble damage provisions of Colorado's Consumer Protection Act, C.R.S. §§ 6-1-101, *et seq.*, treats persons liable

for such claims differently from persons liable for personal injury and bodily injury claims not resulting from construction defects and who violate Colorado's Consumer Protection Act, and, as such, such limitation denies Equal Protection and is void and unenforceable.

h. Termination of CDARA's inflationary adjustment of its noneconomic damages limitations provided for by C.R.S. §13-20-806(4)(b) on July 1, 2008, irrationally treats "construction professionals" differently from other tortfeasors, and, as such, enforcement of this termination date denies Equal Protection and is void and unenforceable.

33. The Homeowners are persons actually adversely affected by and are within the class of persons that are the subject of these statutory provisions. Defendants, or some of them, may be "construction professionals" and/or otherwise persons seeking the benefits of CDARA's damages limitations and the other provisions described above.

34. Because a real and justiciable controversy exists as to whether all or part of CDARA is unconstitutional and otherwise illegal and unenforceable, a declaration of the parties' respective rights and obligations under CDARA with regard to the Homeowners' pursuit of their claims and claimed damages as set forth elsewhere in this *Complaint* is dependent on the Court's answer to these questions and is proper.

WHEREFORE, the Homeowners pray that this Court enter judgment declaring the matters as set forth elsewhere in this *Complaint*, and that the Court order and provide such other relief and declarations as is just and proper.

## SECOND CLAIM FOR RELIEF
### (Negligence – All Defendants)

35. The Homeowners incorporate the above paragraphs as if fully set forth herein.

36. Defendants each owed a non-delegable duty to the Homeowners to cause their Homes to be constructed in a reasonable and good and workmanlike manner.

37. Defendants each breached their duty by failing to cause the Homes to be constructed in a reasonable and good and workmanlike manner such that foreseeable damage would be prevented, including their negligent design, supervision, site selection, investigation, construction and quality control. Defendants also failed to incorporate one or more of the following methods of construction, among others: proper grading and drainage, proper fill and soil preparation, proper backfill, proper flooring systems in the basement or otherwise, a proper foundation system, proper lateral steel reinforcement, proper lateral support, and other proper construction techniques.

38. Defendants' negligence proximately caused damage to and/or loss of use of the Homes and damaged the Homeowners in an amount to be proven at trial.

WHEREFORE, the Homeowners pray below.

## THIRD CLAIM FOR RELIEF
### (Negligent Repair -- All Defendants)

39.     The Homeowners incorporate the above paragraphs as if fully set forth herein.

40.     Defendants owed a duty to the Homeowners to cause their Homes to be repaired in a non-negligent manner.

41.     Defendants each breached their duty by failing to cause the Homes to be repaired in a non-negligent manner such that foreseeable damage would be prevented.

42.     Defendants' negligence proximately caused damage to and/or loss of use of the Homes and damaged the Homeowners in an amount to be proven at trial.

WHEREFORE, the Homeowners pray below.

## FOURTH CLAIM FOR RELIEF
### (Colorado *Consumer Protection Act* -- All Defendants)

43.     The Homeowners incorporate the above paragraphs as if fully set forth herein.

44.     Upon information and belief, the Defendants represented to the Homeowners, in substance, that the Homes would be suitable for their intended use when the Defendants knew they were not, in violation of C.R.S. § 6-1-105(1)(e).

45.     Upon information and belief, the Defendants represented that the Homes and the Defendants' homebuilding and repair services would be of a particular standard or quality when they knew or should have known that they would be of another, in violation of C.R.S. § 6-1-105(1)(g). Upon information and belief, these representations are contained in brochures, verbal representations, conduct, signage, model homes, plans, contracts, verbal representations and/or warranty agreements, all or some of which were widely distributed to the public and were approved by the Defendants.

46.     Upon information and belief, the Defendants advertised their goods, services and/or property with the intent not to sell them as advertised, in violation of C.R.S. § 6-1-105(1)(i).

47.     Upon information and belief, the Defendants failed to disclose material information concerning the nature of risk attendant to any underlying lot conditions presenting special or peculiar dangers in the construction of the Homes, the efficacy of measures available to mitigate damage caused by such conditions, and the substantial likelihood of foundation damage and movement at the site of the Homes. The failure to disclose such information was intended to induce the Homeowners to enter into a purchase agreement, in violation of C.R.S. § 6-1-105(1)(u).

48. In concealing from and/or failing to disclose the foregoing information to the Homeowners, the Defendants violated C.R.S. § 6-6.5-101, rendering the Defendants negligent *per se*.

49. The failure to disclose such material information was intended to induce the Homeowners to enter into a sales transaction with the Defendants rather than their competitors.

50. The Defendants knowingly made false representations and failed to disclose material information regarding the scope and applicability of purported warranties applicable to the Homes, in violation of C.R.S. § 6-1-105(1)(r) and/or § 6-6.5-101.

51. The Defendants' violations of the provisions of C.R.S. § 6-1-105 occurred in the course of their business, vocation or occupation. Furthermore, the making of the misrepresentations and nondisclosures described above constituted bad faith conduct as defined in C.R.S. § 6-1-113 that caused injury and property damage to the Homeowners. The Homeowners reasonably relied upon these misrepresentations or nondisclosures to their detriment.

52. The Defendants' violations significantly impacted the public as actual and/or potential consumers of the Defendants' goods, services and/or property; alternatively, on information and belief, the Defendants engaged in violations of C.R.S. § 6-1-105 substantially similar to those described above in transactions with other consumers, including all other purchasers who were given the contracts, verbal representations, brochures, and/or other documents referred to above or were the subject of nondisclosures described above.

53. The Defendants' misrepresentations and/or nondisclosures also concerned violations of C.R.S. § 6-6.5-101; because such statute was adopted to protect the public's property from property damage and premature deterioration, such misrepresentations and/or nondisclosures involve a matter of public interest and have a public impact as a matter of law.

54. The Defendants' misrepresentations and/or nondisclosures also concerned violations of the applicable building code; because such codes and ordinances were adopted to protect the public's property from property damage and premature deterioration, such misrepresentations and/or nondisclosures involve a matter of public interest and have a public impact as a matter of law.

55. The Homeowners have suffered injuries in fact to their legally protected interests.

56. The Defendants' actions in violation of C.R.S. § 6-1-101, *et seq.*, caused the Homeowners' injuries, damages and losses, entitling them to their actual damages and other recoveries allowed under the law.

57. The Homeowners are entitled to, and hereby demand as damages, three times the amount of their actual damage, plus costs and attorney fees pursuant to C.R.S. § 6-1-113.

WHEREFORE, the Homeowners pray below.

## FIFTH CLAIM FOR RELIEF
### (Nondisclosure or Concealment – All Defendants)

58.    The Homeowners incorporates the above paragraphs as if fully set forth herein.

59.    The Defendants knew or should have known, at the time of the construction of the Homes, that, among other things, and without limitation: the lots were located in an area containing soils and shallow subsurface groundwater conditions presenting special or peculiar dangers in the construction of homes, different in kind from the ordinary risks that commonly confront persons constructing homes in Colorado, that there was a risk that the intrusion of water into such soils and/or other improper construction techniques could result in significantly increased pore water pressure within such soils that might imperil the structural integrity of any home built on such soils, that construction of the Homes on such soil and groundwater conditions would result in unacceptable differential foundation movement and that the Homeowners should have been advised of the significant risk of and potential for damage to the foundation and other elements of the Homes and the need for future repairs.

60.    The Defendants had a duty to cause the disclosure to the Homeowners of the facts set forth above in a manner understandable to them.

61.    The Defendants negligently failed to cause the disclosure of these facts to the Homeowners.

62.    The Defendants negligently failed to cause the disclosure of these facts when they should have known that the Homeowners would take a course of action they might not have taken had they known the actual facts.

63.    The Homeowners purchased their Homes relying on the assumption that the concealed and undisclosed facts did not exist or were different from what they actually were.

64.    The Homeowners' reliance was justified.

65.    The Homeowners' reliance caused foreseeable property damage, economic loss and other damages to the Homeowners, in an amount to be proven at trial.

66.    In addition, the Defendants' violations of the provisions of Colorado's *Consumer Protection Act*, as described in the Homeowners' *Fourth Claim for Relief*, constitute negligent nondisclosure *per se*.

WHEREFORE, the Homeowners pray below.

## SIXTH CLAIM FOR RELIEF
### (Negligent Misrepresentation – All Defendants)

67.    The Homeowners incorporate the above paragraphs as if fully set forth herein.

68. The Defendants caused or permitted representations to be made to the Homeowners that the Homes were built in a good and workmanlike manner and/or that all portions of the Homes were reasonably suitable for their intended uses or in compliance with applicable laws, including the building code.

69. Contrary to the representations of the Defendants, the Homes were not built in a good and workmanlike manner, and all portions of the Homes were not reasonably suitable for their intended uses or in compliance with applicable laws, including the building code.

70. In causing or permitting the foregoing information to be communicated to the Homeowners, the Defendants negligently gave false information to the Homeowners and/or violated C.R.S. § 6-6.5-101, rendering the Defendants negligent *per se*.

71. The Homeowners reasonably relied upon such information.

72. This reliance was a cause of the physical harm to the Homeowners' property as well as other consequential and economic losses.

73. In addition, the Defendants violations of the provisions of Colorado's *Consumer Protection Act*, as described in the Homeowners' *Fourth Claim for Relief*, constitute negligent misrepresentation *per se*.

WHEREFORE, the Homeowners pray below.

## SEVENTH CLAIM FOR RELIEF
### (Breach of Implied Warranty – Laing)

74. The Homeowners incorporate the above paragraphs as if fully set forth herein.

75. Laing sold the Homes to the Homeowners.

76. The Homes fail to comply with one or more of the warranties implied by Colorado law, including, without limitation, that they were built in a good and workmanlike manner; that all portions of the Homes were suitable for habitation and their anticipated uses, and would remain so with reasonable maintenance; and, that the Homes were built in compliance with applicable building codes, and would remain so with reasonable maintenance.

77. The breach of one or more of these implied warranties has caused property damage and other damages to the Homeowners, in an amount to be proven at trial.

78. Any alleged effort by Laing to limit or disclaim these implied warranties is ineffectual and void because, among other reasons, such limitation or disclaimer violates C.R.S. § 13-20-806 and Colorado's public policy; Laing is estopped to assert such a limitation or disclaimer because of Defendants' misrepresentations and concealments, including, without limitation, their failure to make statutory disclosures and violation of Colorado's *Consumer Protection Act*; and,

such disclaimer was not the product of any negotiation, and was not clear, conspicuous and unambiguous.

WHEREFORE, the Homeowners pray below.

### EIGHTH CLAIM FOR RELIEF
**(Breach of C.R.S. § 6-6.5-101 – All Defendants)**

79.	The Homeowners incorporate the above paragraphs as if fully set forth herein.

80.	C.R.S. § 6-6.5-101 states in part as follows:

6-6.5-101. Disclosure to purchaser-penalty.

(1) At least fourteen days prior to closing the sale of any new residence for human habitation, every developer or builder or their representatives shall provide the purchaser with a copy of a summary report of the analysis and the site recommendations. For sites in which significant potential for expansive soils is recognized, the builder or his representative shall supply each buyer with a copy of a publication detailing the problems associated with such soil, the building methods to address these problems during construction, and suggestions for care and maintenance to address such problems.

(2) In addition to any other liability or penalty, any builder or developer failing to provide the report or publication required by subsection (1) of this section shall be subject to a civil penalty of five hundred dollars payable to the purchaser.

81.	The Defendants recognized that the Homes were being constructed on a site with significant potential for expansive soils and susceptible to other soil instability.

82.	The Defendants breached C.R.S. § 6-6.5-101(1), as the Homeowners were never provided with a clear and understandable summary report of the analysis and site recommendations. In addition, or in the alternative, the explanations that were given were vague, ambiguous and misleading to someone not involved in the home construction industry and were not accompanied by sufficient information known to the Defendants, as specifically set forth above, to bring such explanations into compliance with those required by the statute.

83.	The Homeowners are entitled to the statutory penalty of $500 each from each of the Defendants, in addition to their other damages as proven at trial.

84.	The Homeowners have been damaged in an amount to be proven at trial.

85.	In addition, the Defendants' failure to make the disclosures required by C.R.S. § 6-6.5-101, as described above, constitutes negligence *per se* and/or violation of C.R.S. § 6-1-105(1)(g).

WHEREFORE, the Homeowners pray below.

## NINTH CLAIM FOR RELIEF
### (Negligence *Per Se* – All Defendants)

86.     The Homeowners incorporate the above paragraphs as if fully set forth herein.

87.     The Defendants, and each of them, owed a duty to the Homeowners to cause the Homes to be developed, designed, constructed, marketed, sold and repaired in accordance with applicable statutes, ordinances and building codes, including but not limited to the following:

    a.  C.R.S. § 6-6.5-101;

    b.  C.R.S. §§ 12-61-801, *et seq.*

    c.  1997 Uniform Building Code, as adopted and amended by the Town of Erie and/or Weld County.

88.     The Defendants violated these statues, ordinances and building codes by failing to develop, design, construct, market, sell and/or repair the Homes in accordance with these statues, ordinances and building codes.

89.     The Defendants' violation of these statues, ordinances and building codes damaged the Homeowners in an amount to be proven at trial.

90.     One of the purposes of these statutes, ordinances and building codes was to protect against the type of damages sustained by the Homeowners.

91.     The Homeowners are members of the group of persons these statutes, ordinances and building codes were intended to protect.

92.     The Defendants' violation of these statutes, ordinances and building codes constitutes negligence *per se.*

WHEREFORE, the Homeowners pray below.

## PRAYER FOR RELIEF

WHEREFORE, the Homeowners request that judgment enter on their behalf, severally and jointly, against Laing and Larson as follows:

1.      For declaratory judgment on the matters set forth in paragraph 32 above, and such other relief and declarations as are just and proper;

2.      For the Homeowners' damages, costs of suit, fees of experts, including engineering and construction experts, attorney fees as allowed by statute or contract, interest as permitted by law both from the date of occurrence to the date of entry of judgment, as well as post-judgment interest until paid;

3.    For the cost of repairing the Homes to a reasonable and adequate condition, remedying the defects and negligent construction practices of the Defendants;

4.    For the costs and expenses incurred for appraisal fees, storage charges, cleaning costs and other consequential damages flowing from the use of use of all or part of the Homes;

5.    For the reasonable costs of rental or similar housing flowing from the loss of use of all or part of the Homes during periods of repair;

6.    For loss of the use and the loss of enjoyment of all or part of the Homes, as well as for all emotional distress, annoyance, discomfort, inconvenience, and aggravation arising from the injury to the Homes and any required investigation and repair efforts;

7.    For treble damages, costs and attorney fees pursuant to C.R.S. § 6-1-113;

8.    For $500.00 per Plaintiff per Defendant pursuant to C.R.S. § 6-6.5-101; and,

9.    For moratory damages.

## THE HOMEOWNERS DEMAND A TRIAL BY JURY
## OF ALL ISSUES SO TRIABLE

Respectfully submitted,

SULLAN², SANDGRUND, SMITH & PERCZAK, P.C.

*Original signature on file with Plaintiffs' counsel*

Scott F. Sullan, Esq.
Joseph F. Smith, Esq.

**Plaintiff's Addresses:**

Tom and Mary Billmaier
2775 Ironwood Circle
Erie, CO 80516

Gerry and Pierrette Guidry
2781 Ironwood Circle
Erie, CO 80516

Steve and Kerri Schommer
2759 Ironwood Circle
Erie, CO 80516

Holly Toomey
2784 Ironwood Circle
Erie, CO 80516

## CERTIFICATE OF SERVICE

I hereby certify that on the 2*0th* day of January, 2009, a true and correct copy of the foregoing *Complaint and Jury Demand* was mailed, postage prepaid, to the following:

Office of the Attorney General of Colorado
1525 Sherman Street, Fifth Floor
DENVER CO 80203

*Original signature on file with Plaintiffs' counsel*

Molisa Gardner

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on April 22, 2009, I caused a true and correct copy of the foregoing **MOTION FOR RELIEF FROM THE AUTOMATIC STAY, NOTICE OF MOTION AND PROPOSED ORDER GRANTING MOTION** to be placed in the United States Mail, postage prepaid, first-class, addressed to the following on the attached list:

(Counsel to Debtors)
Laura Davis Jones
Timothy P. Cairns
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
Wilmington, DE 19899

(Counsel to Debtors)
Richard M. Pachulski, Esquire
Jeremy V. Richards, Esquire
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, CA 90067-4100

(Counsel to Debtors)
David M. Bertenthal, Esquire
Pachulski Stang Ziehl & Jones LLP
150 California St., 15th Floor
San Francisco, CA 94111-4500

(United States Trustee)
Mark Kenney, Esquire
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 North King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801

(Copy Service)
Parcels, Inc.
Vito I. DiMaio
230 N. Market Street
Wilmington, DE 19801

(US Attorney General)
Ellen W. Slights, Esquire
United States Attorney's Office
District of Delaware
1007 N. Orange Street, Suite 700
Wilmington, DE 19801

(Counsel to RFC Construction Funding LLC)
William E. Chipman Jr., Esquire
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
P.O. Box 2087
Wilmington, DE 19899

(Counsel to Emaar America Corporation)
Eric D. Schwartz, Esquire
John A. Sensing, Esquire
Morris Nichols Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

(Counsel to Wachovia Bank, N.A.)
Francis A. Monaco, Jr., Esquire
Womble Carlyle Sandridge & Rice, PLLC
222 Delaware Avenue, 15th Floor
Wilmington, DE 19801

(Counsel to Bank of America, N.A. and
Countrywide Bank, FSB)
Stuart M. Brown, Esquire
Selinda A. Melnik, Esquire
Edwards Angell Palmer & Dodge LLP
919 N. Market Street, Suite 1500
Wilmington, DE 19801

(Counsel to Housing Capital Company)
Jeffrey M. Schlerf, Esquire
Eric M. Sutty, Esquire
Fox Rothschild LLP
919 North Market Street, Suite 1600
Wilmington, DE 19801

(Counsel to Centex Homes)
Michael G. Busenkell, Esquire
Womble Carlyle Sandridge & Rice, PLLC
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801

(Counsel to the Official Committee of
Unsecured Creditors)
William P. Bowden, Esquire
Gregory A. Taylor, Esquire
Ashby & Geddes, P.A.
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899

(Counsel to ORI Residential Investments I,
L.P.; Resmark Equity Partners, LLC)
Frederick B. Rosner, Esquire
Messana Rosner & Stern LLP
1000 N. West Street, Suite 1200
Wilmington, DE 19801

(Counsel to Southern California Edison
Company, San Diego Gas & Electric Company,
and Southern California Gas Company)
Stevens & Lee, P.C.
John D. Demmy, Esquire
1105 North Market Street, 7th Floor
Wilmington, DE  19801

(Counsel to Venture Painting, Inc.)
Brian A. Sullivan, Esquire
Werb & Sullivan
300 Delaware Ave., 13th Floor
Wilmington, DE  19801

(Counsel to Gwen Winter, et al.)
John C. Phillips, Jr., Esquire
Brian E. Farnan, Esquire
Phillips, Goldman & Spence, P.A.
1200 North Broom Street
Wilmington, DE  19806

(Counsel to the Official Committee of
Unsecured Creditors)
David Neier, Esquire
Winston & Strawn LLP
200 Park Avenue
New York, NY  10166-4193

(Counsel to the Official Committee of
Unsecured Creditors)
Keith A. McDaniels, Esquire
Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

Attn: Insolvency
Internal Revenue Service
1352 Marrows Road, 2nd Floor
Newark, DE  19711-5445

Mark Schonfeld, Esq.
Regional Director
Securities & Exchange Commission
New York Regional Office
3 World Financial Center, Suite 400
New York, NY  10281-1022

Michael A. Berman, Esq.
Securities & Exchange Commission
Office of General Counsel-Bankruptcy
100 F Street, N.E.
Washington, DC  20549

(United States Attorney General)
Eric Holder, Esq.
Office of the Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC  20530-0001

Secretary of State
Division of Corporations
Franchise Tax
P.O. Box 7040
Dover, DE  19903

Secretary of Treasury
P.O. Box 7040
Dover, DE  19903

Secretary of Treasury
15th & Pennsylvania Avenue, N.W.
Washington, DC  20220

Attn:  Insolvency
District Director
Internal Revenue Service
31 Hopkins Plaza, Room 1150
Baltimore, MD  21201

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA  19114-0326

(Counsel for RFC Construction Funding LLC)
David Weitman, Esquire
K&L Gates LLP
1717 Main Street, Suite 2800
Dallas, TX  75201

(RFC Construction Funding LLC)
Laura Mollet, Esquire
General Counsel
RFC Contruction Funding LLC
1 Meridian Crossings
Office MN02
Minneapolis, MN  55423

Wood, Smith, Henning & Berman LLP
10960 Wilshire Blvd., 18th Floor
Los Angeles, CA 90024

Endrizzi Excavating, Inc.
12882 Lemonwood Lane
Garden Grove, CA 92840-5521

(Counsel to Bank of America, N.A.)
Donald L. Gaffney, Esquire
Snell & Wilmer L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202

(Counsel to Emaar America Corporation)
J. Mark Fisher, Esquire
Jon Carlo G. Vigano, Esquire
Kelly M. Warner, Esquire
Schiff Hardin LLP
6600 Sears Tower
233 South Wacker Drive
Chicago, IL 60606-6473

(Counsel to Wachovia Bank, N.A.)
Linda Dakin-Grimm, Esquire
Gregory A. Bray, Esquire
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Mahattan Plaza
New York, NY 10005

(Counsel to Bank of America, N.A. and
Countrywide Bank, FSB)
Donald L. Gaffney, Esquire
Snell & Wilmer L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202

(Counsel to Arapahoe County Treasurer)
George Rosenberg, Esquire
5334 S. Prince Street
Littleton, CO 80166

(Counsel to Housing Capital Company)
William M. Hawkins, Esquire
Loeb & Loeb LLP
345 Park Avenue
New York, NY 10154

(Counsel to Centex Homes)
Jeffrey L. Tarkenton, Esquire
Todd D. Ross, Esquire
Womble Carlyle Sandridge & Rice, PLLC
1401 Eye Street, NW, Seventh Floor
Washington, DC 20005

Weber Construction Inc.
Attn: Jason Ronald Weber
PO Box 76899
Colorado Springs, CO 80970

Van Dyk Construction Inc.
Attn: John Steven Van Dyk
12905 Division St. Unit A,
Littleton, CO 80125

Roddan Paolucci Roddan
2516 Via Tejon, Suite 114
Palos Verdes Estates, CA 90274

WL Homes Land LLC
Attn: Saul B. Pinto
19800 MacArthur Blvd., Suite 700
Irvine, CA 92612

(IKON Financial Services)
Bankruptcy Administration
IKON Financial Services
1738 Bass Road
P.O. Box 13708
Macon, GA 31208-3708

(Counsel for tw tetelcom inc.)
Linda Boyle
tw tetelcom inc.
10475 Park Meadows Drive, #400
Littleton, CO 80124

(Counsel for The Irvine Co., LLC)
Ernie Zachary Park, Esquire
Bewley, Lassleben & Miller, LLP
13215 E. Penn Street, Suite 510
Whittier, CA 90602-1797

(Counsel to Marbella Community Assoc.;
Rivage Condominium Assoc.; and Meridian &
Equinox at Lincoln Crossing Community
Assoc.)
Rod A. Baydaline, Esquire
Baydaline & Jacobsen LLP
895 University Avenue
Sacramento, CA 95825

(Counsel to ORI Residential Investments I,
L.P.; Resmark Equity Partners, LLC)
Cynthia M. Cohen, Esquire
Paul, Hastings, Joanofsky & Walker LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071

(Counsel to Housing Capital Company)
Lance Jurich, Esquire
Loeb & Loeb LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067

(Counsel to Mt. Huron, Inc. d.b.a. Elite Tile)
Jeffrey L. Borsuk, Esquire
Edward D. Barron, Esquire
Borsuk & Associates
1600 South Main Street, Suite 195
Walnut Creek, CA 94596

(Counsel to Master Community Assoc., Inc.)
Loura K. Sanchez, Esquire
HindmanSanchez P.C.
5610 Ward Road, Suite 300
Arvada, CO 80002

(Counsel to O'Grady Paving, Inc.)
Louis F. Doyle, Esquire
Attorney at Law
P.O. Box 360
San Martin, CA 95046

(Counsel to Realty Associates Fund V)
Ronald K. Brown, Jr., Esquire
Law Offices of Ronald K. Brown, Jr.,
901 Dove Street, Suite 120
Newport Beach, CA 92660

(Counsel to SAP America, Inc.)
Donald K. Ludman, Esquire
Brown & Connery, LLP
6 North Broad Street, Suite 100
Woodbury, NJ 08096

(Counsel to Southern California Edison
Company, San Diego Gas & Electric Company,
and Southern California Gas Company)
Russell R. Johnson III, Esquire
2258 Wheatlands Drive
Manakin-Sabot, VA 23103

(Counsel to BMC West Corporation;
SelectBuild Northern California, Inc.; HnR
Framing Systems Inc. d/b/a SelectBuild; C
Construction, Inc. d/b/a SelectBuild)
Scott K. Brown, Esquire
Lewis and Roca LLP
40 North Central Avenue, Suite 1900
Phoenix, AZ 85004

(Claimants in Propriae Personae)
R. Edith Nielsen
Paul Nielsen
8916 Tutt Boulevard
Colorado Springs, CO 80924

(Counsel to Rocky Mountain Drywall, Inc. &
Mile High Trim Company)
Mark D. Gruskin, Esquire
Senn Visciano P,C.
1801 California Street, Suite 4300
Denver, CO 80202

(Counsel to Brookwood Research Center, LLC)
Steven W. Kelly, Esquire
Silver & DeBoskey
1801 York Street
Denver, CO 80206

(Counsel to John Rush and Suzanne Rush)
Robert G. Howie, Esquire
Howie & Smith, LLP
1777 Borel Place, Suite 500
San Mateo, CA 94402

(Counsel to HD Supply White Cap
Construction Supply)
Guy W. Bluff, Esquire
Bluff & Associates, P.C.
844 North 4th Avenue
Phoenix, AZ  85003-1314

(Counsel to Wachovia Bank, N.A.)
David B. Zolkin, Esquire
Milbank, Tweed, Hadley & McCloy LLP
601 S. Figueroa Street, 30th Floor
Los Angeles, CA  90017

(Counsel to JD Concrete, LLC and Silver &
Blue Concrete, Inc.)
Jane B. Fredman, Esquire
Flynn Wright & Fredman, LLC
111 S. Tejon, Suite 202
Colorado Springs, CO  80903

(Counsel to Pacific Coast Supply, LLC)
Jeanne M. Toro, Esquire
Tobey & Toro, P.C.
6855 S. Havana Street, #630
Centennial, CO  80112-3858

(Counsel to Liberty Founders)
Christopher B. Bruny, Esquire
7777 Center Avenue, Suite 300
Huntington Beach, CA  92647

(Counsel to Thomas Redwitz)
Joseph E. Thomas, Esquire
Thomas Whitelaw & Tyler LLP
1810I Von Karman, Suite 230
Irvine, CA  92612-7132

(Counsel to Venture Painting, Inc.)
R. Scott Fitzke, Esquire
Stewart Shortridge & Fitzke, P.C.
4 Inverness Court East, Suite 100
Englewood, CO  80112

(Counsel to Jaho, Inc.)
Stephen Ray Smith
Christian, Smith & Jewell
2302 Fannin, Suite 500
Houston, TX  77002

IKON Office Solutions
Recovery & Bankruptcy Group
3920 Arkwright Road, Suite 400
Macon, GA  31210

(Counsel to Canon Financial Services, Inc.)
Brian M. Fleischer, Esquire
Nicola G. Suglia, Esquire
Fleischer, Fleischer & Suglia
Plaza 1000 At Main Street
Suite 208
Voorhees, NJ  08043

(Counsel to City and County of Denver)
Eugene J. Kottenstette, Esquire
Assistant City Attorney
Municipal Operations
201 West Colfax Avenue, Dept. 1207
Denver, CO  80202-5332

(Counsel to County of Loudoun, Virginia)
Karen J. Stapleton, Esquire
Assistant County Attorney
One Harrison St., S.E., 5th Floor
Leesburg, VA  20175-3102

(Counsel to Crockett Electric Co.)
Joseph M. Sweeney, Esquire
Sweeney, Mason, Wilson & Bosomworth
983 University Avenue, Suite 104C
Los Gatos, CA  95032-7637

Penhall Company
c/o Curtiss D. Bonneville, Esquire
929 North Grand Avenue
Covina, CA  91724

(Counsel to Whitesails Homeowners
Association)
David A. Loewenthal, Esquire
Kevin P. Carter, Esquire
Loewenthal, Hillshafer & Rosen LLP
15260 Ventura Boulevard, Suite 1400
Sherman Oaks, CA  91403

_/s/Allison McKnight_____
Allison McKnight