IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| **WL Homes LLC**, *et al.*, | Case No. 09-10571 (Jointly Administered) |
| Debtors. | Related to Docket Nos.: 1122, 1153, 1156, 1575, 1576, 1578, & 1584 |

# OPINION[1]

Before the Court is the Motion for Relief from the Automatic Stay filed by Zurich American Insurance Company. Zurich holds roughly $2.2 million in insurance premium overpayments—called a "return premium"—that belong to the debtor, WL Homes, under a pre-bankruptcy insurance policy. At the same time, a number of homeowners have filed construction defect claims against WL Homes that, under the policy, Zurich may elect to defend. Zurich would like to setoff the return premium against a portion of its potential defense costs. To do that, it needs the Court to lift the automatic stay imposed by the Bankruptcy Code. But because Zurich has not established its right to setoff under either state law or §553 of the Bankruptcy Code, there is no "cause" to lift the stay. The Motion is denied.

## I. BACKGROUND

Before its 2009 bankruptcy filing, WL Homes was among the nation's largest and most-respected homebuilders, building everything from entry-level condos to multimillion dollar estates. In 2002

---

[1] The Court's jurisdiction over this contested matter is not in dispute. It exists under 28 U.S.C. §§157(a) and 1334. Venue is also proper here under 28 U.S.C. §§1408 and 1409. This is a core proceeding under 28 U.S.C. §157(b)(2)(G).

the company took out a Home Builders Protective Insurance Policy with Zurich. The policy was renewed four times between 2002 and 2009, with the final renewal occurring in May 2007 and running through May 2009.

During that final term the policy covered WL Homes for, among other things, damages and defense costs relating to construction defect claims. But the coverage only kicked-in after WL Homes itself paid a certain amount of those costs, defined as a "self insured retention." Specifically, Section IV.D. of the policy provides:

> Except for any "defense costs" that [Zurich is] obligated to pay [in] excess of the "self insured retention," or that [Zurich] may elect to pay, [WL Homes] shall pay all such "defense costs" as they are incurred until [WL Homes] ha[s] paid "defense costs" and damages for the coverages included in the policy equal to the applicable "self insured retention" amount. If any final judgment or settlement and "defense costs" is less than the "self insured retention" amount stated above, [Zurich] shall have no obligation to pay damages or "defense costs" under this policy.

(Homeowners' Resp. Ex. D at ZUR00233.)

It turns out that some of the homes WL Homes built over the years contain flaws, leading homeowners to file construction defect claims against the company. Those claims are now pending before this Court and other courts around the country. Some of the claims are large enough to implicate Zurich's coverage obligations under the policy.

After WL Homes filed for bankruptcy, and in accordance with the policy, Zurich performed an audit and determined that WL Homes had overpaid its premium obligations for the 2007 to 2009 term by roughly $2.2 million. The policy entitles WL Homes to get that return premium back, but Zurich has yet to relinquish it. Instead, Zurich has asked this Court for relief from the automatic stay to apply the return premium towards any amounts it may "elect to

pay" defending construction defect claims within the self insured retention.

George L. Miller, the chapter 7 trustee administering WL Homes' bankruptcy estate, objected to the lift stay motion, as did the some of the homeowners. The objectors argue, among other things, that Zurich has not shown cause to lift the stay. After reviewing the parties' written submissions and hearing oral argument, the Court agrees with the objectors.

## II. LEGAL ANALYSIS

In the simplest terms, "setoff" (or "offset") allows parties to cancel mutual debts. It has been called "a right grounded in concepts of fairness and equity," reflecting the absurdity of "making A pay B when B owes A." *United States v. Myers (In re Myers)*, 362 F.3d 667, 672 (10th Cir. 2004). In the bankruptcy context, setoff allows a party holding property of the bankruptcy estate to keep the property up to the amount of the setoff right. 11 U.S.C. §542(b).

Since the Bankruptcy Code's enactment in 1978, §553(a)[2] has stated that, with some exceptions not applicable here, the Code does not affect any right of setoff that a creditor had before the bankruptcy. *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 20 (1995). The Third Circuit has noted, however, that §553 "is permissive rather than mandatory, and cannot be invoked in a case where the general principles of setoff would not justify it." *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 896 F.2d 54, 57 (3d Cir. 1990). Thus, whether to allow setoff pursuant to §553 is left to the sound discretion of the bankruptcy court. *In re HAL, Inc.*, 196 B.R. 159, 161 (B.A.P. 9th Cir. 1996), *aff'd*, 122 F.3d 851 (9th Cir. 1997).

---

[2] 11 U.S.C. §553(a) provides: "[T]his title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case …."

3

Though §553 incorporates the right of setoff available outside of bankruptcy, creditors seeking to exercise that right inside a bankruptcy case cannot do so unilaterally, due to the automatic stay that arises the instant a bankruptcy petition is filed. *See* 11 U.S.C. §362(a)(7). Creditors thus commonly ask courts to lift the stay. Such a request must be granted if the creditor shows "cause." 11 U.S.C. §362(d)(1). Showing cause requires the creditor to first establish its right to setoff by finding an independent right of setoff under nonbankruptcy law. It then must show that the conditions §553 places on setoff are satisfied.

### *Zurich Has Not Established That Nonbankruptcy Law Permits It To Setoff Its Asserted Claim*

Zurich says it holds a "contingent claim" against the WL Homes bankruptcy estate "to the extent [Zurich] advances defense costs within the self insured retention." (Zurich Reply, 2, 17.) And it argues that California law permits it to setoff that claim against the return premium. Specifically, Zurich contends that "California law supports setoff rights even when they are subject to a number of contingencies." (*Id.* at 17; *see also* Zurich Motion ¶ 22 ("Under California law, parties are entitled to setoff claims even if such claims are unmatured, unliquidated, [or] contingent.")) But the only authority that Zurich cites for that key proposition—*In re Luz International Ltd.*, 219 B.R. 837 (B.A.P. 9th Cir. 1998)—is not on point. *In re Luz* involved New York, not California law. And there, unlike here, no one "dispute[d] that New York law recognizes a creditor's setoff right." Rather, the issue in *In re Luz* was whether the party seeking setoff had satisfied §553's requirements for setoff. While the court recognized that under the Bankruptcy Code, "a 'claim' is defined as 'a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured…,'" the court said nothing about if and when California law permits the setoff of a contingent claim.

In the absence of more compelling authority, the Court finds that Zurich's say-so is simply not enough to *establish*—as is Zurich's burden—that California law would permit this type of contingent claim to serve as the basis for setoff. Moreover, the Court's own research, though limited, revealed reasons to doubt that it would. *See* 16 Cal. Jur. 3d., Counterclaim and Setoff, §10 (2012) ("Ordinarily, when a liability is contingent, and not fixed, it is unavailable as a setoff without the consent of the plaintiff. … A claim urged as a setoff … must be mature at the time when the judgment debtor seeks the setoff. Thus, a judgment debtor's right to receive payments from a judgment creditor on a note that is not yet due at the time when the setoff is sought does not constitute a proper subject for equitable setoff.").

### *Zurich Has Not Met §553's Requirements for Setoff*

Even assuming that Zurich's claim could be the basis for setoff under California law, the Court would nonetheless refuse to lift the stay as a matter of bankruptcy law. Section 553(a) of the Bankruptcy Code says that to setoff a mutual debt and claim both must have arisen pre-petition. *See Anes v. Dehart (In re Anes)*, 195 F.3d 177, 183 (3d Cir. 1999). The question of when a claim "arises" in bankruptcy is one of bankruptcy law, not state law. *See Jeld-Wen, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 121 (3d Cir. 2010). Courts interpreting §553 have consistently held that, for setoff purposes, a claim—even a contingent one—arises when "all transactions necessary for liability occur." *United States v. Gerth*, 991 F.2d 1428, 1433 (8th Cir. 1993); *In re Lehman Bros. Holdings Inc.*, 404 B.R. 752, 759 (Bankr. S.D.N.Y. 2009). Just because a claim "can exist under the Code before a right to payment exists" for general bankruptcy purposes, *Grossman's*, 607 F.3d at 121, does not mean that such a claim always provides the basis for a right of setoff. Rather, setoff "is permitted when, at the time the bankruptcy petition is filed, the *debt is absolutely owing* but is not presently due, or when a *definite liability has accrued* but is not yet liquidated." *In re Young*, 144 B.R. 45, 46-47

(Bankr. N.D. Tex. 1992) (emphasis added); *see also Global Cable, Inc., v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, No. 02-CIV-9770, 2006 WL 1559437, at *2 (S.D.N.Y. June 7, 2006) (upholding bankruptcy court's ruling that creditor lacked "a valid right of setoff under 11 U.S.C. §553, ... as its claim against [the debtor] is ... not a liability that is 'absolutely owed.'"). Neither criterion is met here.

There is no evidence in the record that as of the petition date Zurich had elected to pay, or had in fact paid, any amounts within the self insured retention. And indeed Zurich does not argue that it did.[3] Rather, Zurich's argument is that it may "elect" to fund the self insured retention post-petition, and that if it does it has the right to setoff that amount against the return premium. But if there is still an election *yet to be made* and money *yet to be paid*—both of which are decisions entirely within Zurich's control post-petition—then not "all transactions necessary" for a definite liability to accrue occurred as of the petition date. Indeed, Zurich itself emphasizes that "it has the *option, not the obligation* to defend and pay claims under the self insured retention." (Zurich Reply, at 20 (emphasis in original).) Zurich thus could choose not to defend or settle claims within the self insured retention, in which case WL Homes would never be liable to Zurich. To setoff under §553 there can be no question that "liability has attached to the debt as of the petition date …." *Myers*, 362 F.3d at 673. Here there was, and still is, a question. Zurich has not established a right of setoff under §553.

### III. CONCLUSION

Today's decision is a narrow one. The only question before the Court is whether Zurich has shown cause to lift the automatic stay to exercise its alleged right to setoff. The Court holds that it has not. The Court makes no finding either way on the myriad other issues

---

[3] Zurich does allege that "on the Petition Date, [it] was already *dealing with* construction defect claims under the policy totaling millions of dollars." (Zurich Reply, at 13 (emphasis added).) But that statement is both ambiguous and not supported by evidence.

the parties raised in their briefs, including the validity, nature, or status of Zurich's claim. Nor has the Court ordered Zurich to surrender the return premium today, as that request has not yet been made.

The Motion is **DENIED**.

**BY THE COURT**:

Dated: May 16, 2012
Wilmington, Delaware

_____
Brendan Linehan Shannon
United States Bankruptcy Judge